JAMES H. CLARK and WILLIAM T. CLARK, infants, by Ezekiel Clark, their guardian, *vs.* A. C. MONTGOMERY and G. W. MALIN.

In an action upon the official bond of a general guardian, brought against the principal and surety, in which a part of the breaches assigned are the fraudulent acts of the guardian in proceedings instituted by him for the sale of his wards' real estate, proceedings had before the surrogate for the removal of the guardian, and the judgment roll in an action brought by the wards against such guardian and others, in which action it was adjudged that the proceedings for the sale of the wards' real estate were fraudulent and void and were set aside, are not competent evidence against the surety, to prove the guardian's misconduct; the surety being neither a party nor a privy to those proceedings, and not being affected by them.

And where it appears, in such action upon the guardian's bond, that the legal costs of the previous action, brought against the guardian and others, together with an extra allowance, have been paid, the plaintiffs cannot recover the sums paid by them to their counsel in that action.

Nor can the plaintiffs in such action recover the costs of the proceedings before

Clark v. Montgomery.

the surrogate for the removal of the guardian; the bond given by the guardian not reaching or providing for such costs.

It is the duty of the general guardian of an infant to provide for the support, maintenance and education of the infant out of his estate; notwithstanding the infant has a father living; provided the father is poor, and unable to support him. And for sums expended for that purpose the guardian should be allowed, on the settlement of his accounts.

THIS action was brought upon a bond dated March 2, 1850, given by the defendants, in the penalty of $6000, to the plaintiffs, who were infants under the age of twenty-one years. The condition of the bond, after reciting that the defendant Montgomery had applied to the surrogate of Yates county to be appointed general guardian of the plaintiffs, provided in substance and to the effect that in case the said Montgomery should be appointed such general guardian, and should faithfully and in all things discharge the duties of guardian to the plaintiffs, according to law, and should render a just and true account of all moneys and property which should be received by him as such guardian, and the application thereof, and of his general guardianship in all respects, to any court having cognizance thereof, when thereunto required, then the said bond was to be void, otherwise to remain in full force. This bond was duly approved by the surrogate and filed in his office on the day of its date, and Montgomery was thereupon appointed general guardian of the plaintiffs, and immediately entered upon the duties of his trust. The breaches assigned in the complaint were as follows: 1. That Montgomery, on or about the 12th day of November, 1851, combining and confederating with one John Gardner and one John Underwood to cheat and defraud the plaintiffs out of their right, title and interest in and to a farm of about 240 acres of land in the town of Jerusalem, Yates county, presented a petition to the supreme court of the state of New York, and by fraudulently concealing from the court the facts and circumstances in relation to the plaintiffs' rights and interests, in and to said farm, caused and procured an order of said court appointing him, the said Montgomery, special guardian of the plaintiffs for the purpose of selling

their right, title and interest in and to said farm, and caused and instituted such other fraudulent proceedings in the said supreme court, that by means thereof he obtained an order from said court authorizing and empowering him, the said Montgomery, to sell and convey the right, title and interest of the plaintiffs in and to said farm for less than $2200, in pursuance of which order the said Montgomery sold and conveyed all the right, title and interest of the plaintiffs in and to said farm to the said John Underwood, for less than $2200, when in fact such right, title and interest was worth $6600, which was well known to said Montgomery. That afterwards, and about the first of December 1851, proceedings were instituted in behalf of the plaintiffs, before the surrogate of Yates county, to remove the said Montgomery from his trust as such guardian, on account of his said misconduct and fraudulent acts. That such proceedings were continued before the said surrogate until about the 19th day of January, 1852, when the said Montgomery was, by an order of the said surrogate, removed from his trust as such general guardian of the plaintiffs, on account of his said misconduct and fraudulent acts, and the said surrogate then and there, in and by the said order, adjudged that the said Montgomery be personally charged with the costs and expenses of the proceedings for his removal, and that he pay the same in sixty days from the date of such order, which costs as liquidated by the surrogate, exceeded the sum of $150, no part whereof has been paid. That after the sale by Montgomery, of the plaintiffs' right and interest in said farm, and about January 1st, 1852, the plaintiffs, by their guardian, commenced an action in this court against Montgomery, Gardner and Underwood, for the purpose of setting aside the said proceedings for the sale of the plaintiffs' interest in said farm, and of having the deed from Montgomery to Underwood declared fraudulent and void, and for a reconveyance of said farm by Underwood to the plaintiffs ; and that such proceedings were had in said action that it was adjudged and determined by said court that the order obtained by Montgomery, appointing him special guardian in the proceedings for the sale of said farm as aforesaid, was

Clark *v.* Montgomery.

fraudulently obtained, and said order and all subsequent proceedings thereon were adjudged fraudulent and void; and that the deed of Montgomery to Underwood was fraudulent and void; the roll of which judgment was duly filed in the office of the clerk of Yates county, on the 28th day of February, 1853. By reason of which false and fraudulent proceedings of said Montgomery, the plaintiffs have sustained damages, to $500, and have paid out $300 to counsel in their action to set aside said proceedings, and in and about their proceedings to remove Montgomery from his trust as guardian as aforesaid. That Montgomery has not accounted for his actings and doings as guardian, &c. That while he was acting as guardian for the plaintiffs, and before his removal, &c. he, the said Montgomery, received large sums of money for rents and profits of the plaintiffs' real estate, amounting to $350, which he had not accounted for.

The complaint prayed judgment that Montgomery account for the said rents and profits, and for all moneys received by him while such guardian, and that the plaintiffs have judgment against the defendants for any balance which might be found in the said Montgomery's hands; and that they might have judgment for three times the amount of the actual damages sustained by the plaintiffs in consequence of the said fraudulent actings and doings of the said Montgomery as their guardian in the sale of their interests in the said farm, including the costs and expenses of removing said Montgomery, as aforesaid, and of prosecuting said action, according to the provisions of the statute in such case made and provided, with the costs of this action.

The defendants appeared and put in their answers to the complaint, and the cause was referred to a sole referee, to take and state the accounts of said Montgomery as former general guardian of the plaintiffs, and to hear and decide the action. On the 25th of May 1855, the referee made a report by which he found that on the 2d of March, 1850, Montgomery was duly appointed by the surrogate of Yates county the general guardian of the plaintiffs, who were then infants, under the age of 14 years, and

that on the same day the defendants executed the bond as before stated, which was duly approved and filed, &c. That shortly after Montgomery's appointment as general guardian for the plaintiffs, he as such agreed to pay George S. Clark, the father of the plaintiffs, for boarding, clothing and schooling them, the sum of $100 per year each, by applying the rents and profits of their real estate to such payment, the excess thereof, over the amount of such rents and profits, to be applied upon a debt amounting to $500, then owing by said George S. Clark and his wife for services rendered by him for them in the final settlement of the estate of Rachel Malin, deceased; and that on the 7th day of October, 1850, one Peter Houghtaling, on Montgomery's written order as such guardian, delivered to said George S. Clark, grain and other farm produce, raised on the real estate belonging to the plaintiff James H. Clark, amounting in value to the sum of $51.25. That the proceedings for the sale of the plaintiffs' interest in the said farm, before mentioned, were instituted and completed as before stated, and an action subsequently commenced by the plaintiffs by their guardian against the said Montgomery, Gardner and Underwood, and judgment rendered therein, as before stated, with $277.81, costs and disbursements, of which $69.81 was for disbursements, and the remaining sum, $208, was for costs and extra allowance. That the defendants in that action appealed to the general term, where the judgment was affirmed with costs, which were adjusted by the clerk of Yates county, at $49.21, of which $4.21 was for disbursements. That the services of the plaintiffs' attorneys in said action, and on said appeal, were worth the sum of $300. That the sum of $277.81, costs and disbursements in said actions, and $49.21 costs and disbursements on the appeal, have been paid by Montgomery to the plaintiffs' attorneys. That proceedings were instituted before the surrogate of Yates county for the removal of Montgomery as guardian, upon which he was removed, as also hereinbefore set forth; and that he was made personally chargeable, and ordered to pay to the surrogate the costs and expenses of his removal, including the costs and expenses of the proctor for

---

Clark *v.* Montgomery.

---

the petitioners for such removal, amounting to $45.55, of which $33.55 was for disbursements and fees of officers, and $12 was for proctor's fees ; and that the services of the plaintiffs' attorneys as proctors for the petitioners were worth the sum of $55.

The referee also reported that the plaintiffs were entitled to recover of the defendants for the costs and expenses of the proceedings before the surrogate for the removal of the defendant Montgomery from his trust as the guardian of the plaintiffs, the sum of $45.55. Also for the value of the services of the said plaintiffs' attorneys as proctors on such proceedings, over and above the sum of $12, allowed by the surrogate, the further sum of $43. Also for interest on said sums to the date of the report. That the plaintiffs were also entitled to recover of the defendants, for the value of the services of the plaintiffs' attorneys in the action in this court to set aside the deed to Underwood, of the plaintiffs' interest in the said estate, including their services on the said appeal, over and above the said sum of $258, costs, already paid by the defendant Montgomery to said plaintiffs' attorneys, the sum of $42.00. Also for interest thereon. That the plaintiffs were also entitled to recover of the defendants for the balance in the hands of Montgomery as former general guardian of the plaintiffs, the sum of $166.25, and interest; and that the plaintiffs should have judgment against the defendant for the sum of $360.85, besides costs.

Judgment was entered upon this report, in favor of the plaintiffs, against the defendants, for the above amount of $360.85, with $79.10 costs.

The defendants made a case containing all the evidence and other proceedings on the trial before the referee, which are sufficiently stated in the opinion of the court.

*D. Rumsey*, for the defendants.

*D. B. Prosser*, for the plaintiffs.

*By the Court*, WELLES, J. It appears by the case that the referee received in evidence the petition to the surrogate,

and proceedings founded thereon, with the order of the surrogate for the removal of Montgomery as general guardian of the plaintiffs. This evidence was offered for the purpose of proving, as stated by the counsel for the plaintiffs, that Montgomery acted fraudulently in the sale of the plaintiffs' lands, as alleged in the complaint, and for the purpose of proving his actual removal as such guardian; which was objected to by the defendants' counsel in due time and in proper form. It also appears in like manner that the referee received in evidence the judgment roll in the action brought by the plaintiffs, in this court, against Montgomery, Gardner and Underwood, in which action it was adjudged that the proceedings for the sale of the plaintiffs' interests in the farm mentioned were fraudulent and void and were set aside, and Underwood, the grantee of the farm under those proceedings, was ordered to reconvey the farm to the plaintiffs. The counsel for the plaintiffs offered to read this judgment roll in evidence, as the case states, to prove, 1st. The fact of the removal of Montgomery as general guardian of the infant plaintiffs. 2d. To prove the sale of the real estate, as alleged in the complaint. 3d. To prove that Montgomery, in procuring and making such sale, as the guardian of said infants, acted fraudulently. The defendants' counsel, in due time and in proper form, objected to the evidence. This evidence was undoubtedly competent and proper as against the defendant Montgomery, but it did not prove any thing against the defendant Malin, for the reason that the damages to the plaintiffs arising out of the improper conduct of Montgomery, as charged in the complaint, was not embraced within his liability as surety upon Montgomery's official bond as guardian. A portion of the breaches of the condition of the bond assigned in the complaint, are the fraudulent acts of Montgomery in the part he took in the proceedings to procure the sale of the interest of the plaintiffs in the farm mentioned; and assuming that the condition of the bond embraced and was intended to provide against the wrongful and fraudulent conduct of Montgomery, the proceedings before the surrogate for his removal, and the judgment roll in

Clark *v.* Montgomery.

the action against him and Gardner and Underwood were incompetent evidence against Malin to prove Montgomery's misconduct. Malin was neither a party or privy to those proceedings, and is not to be affected by them. (*Douglass* v. *Howland,* 24 *Wend.* 35 *to* 58, *&c. and authorities there cited. Coan* v. *Osgood,* 15 *Barb.* 583, *and authorities there cited.*)

The foregoing proceedings before the surrogate, and the judgment roll in the action in this court, mentioned and set forth in the case, was all the evidence before the referee tending to prove the misconduct of Montgomery as guardian. It follows, therefore, that the report, as respects the defendant Malin, in this particular, was unsupported by any legal evidence whatever, as there is no evidence that he had any notice of the proceedings before the surrogate, or of the commencement of the action, so as to enable him to make a defense; even if a notice would have so far connected him with the proceedings and the action as to affect him by their results.

But admitting that the judgment roll was properly received, and the charge of Montgomery's fraudulent conduct thereby established, the evidence detailed in the case, as well as the report of the referee, show that all the legal costs of that action, together with an extra allowance by the court, have been paid; and the plaintiff is not at liberty now to come and claim that the law had not given him sufficient compensation, and ask the court to compel the surety, nor even the principal, to make up the balance.

In respect to the costs before the surrogate, on the proceedings for the removal of Montgomery as general guardian, the bond does not reach or provide for them. The condition of the bond was that Montgomery should faithfully and in all things discharge the duties of general guardian to the plaintiffs, according to law, and should render a just and true account of all moneys and property which should be received by him as such guardian, and the application thereof, and of his general guardianship in all respects, to any court having cognizance thereof, when thereunto required. The costs of removing him did not

appertain or relate to his doings or conduct as guardian, and were not within the liability of the surety on his bond; and if they were, the extra counsel fees allowed by the referee were entirely unwarranted by law.

It also appears to us that the referee should have made an allowance to Montgomery for boarding, clothing and schooling the plaintiffs while they were with their father, under the contract between them, as reported by the referee, as is shown by the evidence. This contract was entered into shortly after the appointment of Montgomery as the plaintiffs' general guardian, and they continued with their father under it for nearly two years, and for which no allowance has been made by the referee. It was objected to, before the referee, on the ground that Clark, the father of the plaintiffs, was bound by law to maintain, support and educate the plaintiffs out of his own means. That is so, under certain circumstances and as between persons standing in certain relations to each other. But it is the primary duty of the general guardian of an infant to provide for its support, maintenance and education. He stands *in loco parentis* to his ward, and is entitled to his custody and to direct his education, &c. (2 *R. S.* 150, §§ 1, 2, 3. *Id.* 151, § 9.) It is unusual for the surrogate to appoint a general guardian for an infant having a father, yet it may be, and sometimes is, done; and then the guardian succeeds to the rights and duties of the father, subject to the authority and discretion of a court of equity. In the present case the presumption is that there was good cause for the appointment; and it was in all respects valid until the guardian was removed. It is also to be presumed that the arrangement between Montgomery and the parents of the plaintiffs, for their boarding, clothing and schooling, was a reasonable and proper one, until something is shown to the contrary; and should be treated as valid, and upheld accordingly. The evidence shows that the father was poor, and the farm of the plaintiffs was their separate property. Under such circumstances we can see nothing improper in the guardian paying for their support and education out of their separate estate.

We think the judgment should be reversed, the report set aside and a new trial granted, with costs to abide the event.

Judgment accordingly.

[Monroe General Term, December 1, 1856. *T. R. Strong*, *Welles* and *Smith*, Justices.]